UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JAMES M.S. COLLINS,

        Plaintiff,                              ORDER
                                            05-CV-3474 (JFB)(LB)

            – against –

JOHN E. POTTER, POSTMASTER GENERAL,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOSEPH F. BIANCO, District Judge:

       Plaintiff James M.S. Collins ("Collins" or "plaintiff") brought this action against his employer, defendant John E. Potter, Postmaster General ("defendant"), alleging employment discrimination on the basis of plaintiff's disability pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act").[1] Specifically, plaintiff alleges that defendant (1) took adverse action against plaintiff because of his allegedly disabled wrist – namely, the assignment of plaintiff to perform heavy labor on defendant's loading platform; (2) failed to accommodate plaintiff's modified work assignment by assigning plaintiff to such labor; and (3) assigned plaintiff to the loading dock in retaliation for plaintiff's filing several workers' compensation claims and a federal lawsuit against defendant.[2] On January 24, 2008, defendant moved for summary judgment

---

[1] The standard for evaluating a claim under the Rehabilitation Act is the same as that applied to claims under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq* (the "ADA"). 29 U.S.C. § 791(g) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990.").

[2] In addition, although defendant suggested that plaintiff also brought a claim of disparate impact – and argued that summary judgment on this claim is warranted – nothing in the complaint (other than plaintiff's

1

pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff submitted his opposition on March 13, 2008. Defendant submitted his reply on June 4, 2008. The Court held oral argument on June 20, 2008. For the reasons set forth below, defendant's motion is denied in its entirety.[3]

## I. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled

---

checking the box next to "unequal terms and conditions of employment") or plaintiff's other written submissions suggests that plaintiff is asserting such a claim. In fact, despite defendant's raising the issue, plaintiff did not even address such a claim in his opposition papers. Thus, even if it were asserted, this claim has been abandoned. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614 (WHP), 2006 U.S. Dist. LEXIS 7368, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI), 2005 U.S. Dist. LEXIS 22444, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00-CV-9827 (MBM), 2003 U.S. Dist. LEXIS 166, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). In any event, the Court agrees with defendant that summary judgment would be warranted on any such claim because plaintiff has presented absolutely no evidence that similarly situated employees were treated differently from him. Thus, to the extent that plaintiff is alleging a disparate impact claim, summary judgment on such claim is warranted.

[3] The Court notes as a threshold matter that, at oral argument, the parties agreed – based upon the terms of a prior settlement between the parties (in connection with a separate litigation), as well as issues related to the statute of limitations – that the sole time period at issue in the present case is February 10, 2003 through March 27, 2003.

2

to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

In addition, the Second Circuit has provided specific guidance regarding summary judgment

3

motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. Discussion

#### (1) Employment Discrimination Claim

##### a. Legal Standard

The ADA prohibits discrimination against "any qualified individual with a disability because of the disability of such individual in regard to [employment]." 42 U.S.C. § 12112(a). Claims of employment discrimination under the ADA are evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent*

*Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

In order to establish a prima facie case of discrimination, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the'" adverse employment action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find

5

that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y.*, *Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

b. Application

Collins alleges that, because he has an allegedly disabled wrist, defendant took an adverse employment action against plaintiff by forcing him to work on defendant's loading dock – in contravention of the modified work assignment plaintiff had obtained because of his allegedly disabled wrist. Defendant argues that he is entitled to summary judgment on this claim because plaintiff has failed to state a *prima facie* case for employment discrimination as a matter of law. In particular, defendant argues that Collins does not have a "disability" under the Rehabilitation Act and that he did not suffer an adverse employment action. However, for the reasons set forth below, the Court has determined that genuine issues of material fact exist as to both of these elements of the *prima facie* case.

With respect to the question of plaintiff's disability, the ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of

such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.S. § 12102(2). As the Second Circuit has recognized, "a regulation implementing the Rehabilitation Act interprets the term 'major life activities' to include 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 642 (2d Cir. 1998) (quoting *Bragdon*, 118 S. Ct. at 2205). However, as the Second Circuit has also recognized, "this list is illustrative, and not exhaustive." *Colwell*, 158 F.3d at 642. For instance, the Second Circuit has "identified other 'major life activities,' including, but not limited to, 'sitting, standing, lifting, or reaching.'" *Colwell*, 158 F.3d at 642 (quoting *Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir. 1998)). Here, plaintiff has submitted an affidavit stating: (1) "I suffer from a disability to my right wrist and hand" (Pl.'s Aff. ¶ 4.); (2) "The onset of my disability occurred in approximately 1972, when I slipped and fell on a construction site, hitting my right wrist on construction material, suffering a fracture of the navicular bone" (Pl.'s Aff. ¶ 5); (3) "The disability is further complicated by the britality and the decreased flexibility of my wrist, which makes it difficult to perform day-to-day tasks, for fear of placing my wrist at the risk of re-injury" (Pl.'s Aff. ¶ 6); (4) "Over the years I have re-injured my wrist on so many occasions that I lost track of them" (Pl.'s Aff. ¶ 6); (5) "On January 18, 1993, I re-injured my wrist in a car accident" (Pl.'s Aff. ¶ 7); (6) My disability affects many of my major life activities, due to the pain and discomfort in my wrist, inability to perform repetitive motion tasks, and the constant need to avoid situations that place my wrist at the risk of re-injury. For example, I have to be extra careful when I walk on the stairs, carry shopping bags, or board the train. I have difficulty walking after dark and in slippery weather conditions" (Pl.'s Aff. ¶ 8); and (7) I have already re-injured my wrist on numerous occasions. Pretty much any time I loose [sic] my balance and land on my wrist, the wrist gets re-

injured, because it's very stiff, and has very minimal flexibility" (Pl.'s Aff. ¶ 9).[4] In addition, plaintiff has submitted a letter from plaintiff's orthopedic surgeon that states, among other things:

> The patient has been left with a permanent partial disability. He has been cautioned and advised, over the years, about limiting and restricting the use of his wrist. He has, as a postal employee, subjected his wrist to repetitive type of trauma and injury in the work he was required to do. That type of trauma did happen in a modified duty position that he was working in.
> The plaintiff reinjured his wrist in 1995, when he lifted and moved a loaded mail tray. . . .
>
> ***
>
> It is my opinion, that the patient has a permanent partial disability, that he suffered permanent changes in his right wrist which has affected his ability to use his wrist and his ability to perform many of his work required duties. These injuries are absolutely permanent in nature. The AMA Guidelines establishes a loss of, at least, 19% of the right upper extremity. The injury to the wrist has resulted in degenerative changes which are on going [sic] and which will increase over time.

(Letter of Ben Benatar, M.C., P.C., dated February 10, 2004, at 1-2.)

Under these circumstances, the Court declines to conclude as a matter of law that plaintiff did not have a disability that substantially limited one or more of his major life activities. Reviewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, a reasonable juror could find, at a minimum, that plaintiff's work activities were substantially limited because of his permanent wrist injury.

Similarly, the Court declines to conclude as a matter of law that plaintiff did not suffer an adverse employment action on the basis of this disability – namely that, because of plaintiff's

---

[4] The Court is aware that defendant claims that plaintiff's deposition testimony contradicts his affidavit in various places. Defendant thus urges the Court to disregard plaintiff's affidavit. (*See* Def.'s Reply 56.1 Statement ¶ 5.) The Court recognizes that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (quotation marks omitted). However, in the instant case, the Court declines to disregard the affidavit and believes these inconsistencies go to the weight to be given to plaintiff's statements, rather than warranting that the statements in the affidavit be completely disregarded.

disability, defendant required plaintiff to work on the loading dock, despite plaintiff's modified work assignment. "Employment actions that we have deemed sufficiently disadvantageous to constitute an adverse employment action include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams*, 368 F.3d at 128) (internal quotation marks omitted). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); *see also Fahmy v. Duane Reade, Inc.*, No. 04 Civ. 1798, 2006 U.S. Dist. LEXIS 37703, at *33 (S.D.N.Y. 2006) ("There is no dispute that . . . the transfer to difficult stores constitute[s] adverse employment action[.]"); *Neratko v. Frank*, 31 F. Supp. 2d 270, 283 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action."). The Second Circuit has held, for example, that the "assignment of a disproportionately heavy workload" constitutes an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004). Similarly, "[c]omparatively poor assignments can constitute adverse employment actions." *Wright v. N.Y. City Off-Track Betting Corp.*, No. 05 Civ. 9790, 2008 U.S. Dist. LEXIS 22567, at *10 (S.D.N.Y. 2008) (collecting cases). Here, plaintiff stated in his affidavit that pursuant to his modified work assignment as a "modified PTF clerk," plaintiff's assignment consisted of "verifying mail destined for Computer Forwarding Service, . . researching addresses, answering phones, and serving patrons at the door. This position did not involve heavy lifting or

9

repetitive motion tasks with [his] wrist, hand, and arm." (Pl.'s Aff. ¶ 13.) However, according to plaintiff, during a time period up to and including the time period relevant to this action, *i.e.,* February 10, 2003 through March 27, 2003, plaintiff was required to perform tasks on defendant's loading platform, including a requirement that plaintiff

> load and unload trucks and assist letter carriers loading their vehicles. The Loading Platform job required me to lift trays of mail and push and pull heavy equipment such as "bird cages," post cons, tubs, and skids. A "birdcage" is a metal pushcart for transporting batches of magazines, large packages, and assorted other mail. It consists of a large (approximately 6 feet by 3 feet) heavy steel base, with metal mesh on top to hold its load, and wheels holding it up. A "birdcage" can weigh hundreds of pounds. A "post con" is a two-tiered shelf on wheels, with a steel base. It contains metal trays loaded with letters, magazines, periodicals, and other [mail]. A "post con" weighs around (200) pounds.

(Pl.'s Aff. ¶ 15.) In addition, plaintiff has provided several signed notes from colleagues who attest to observing plaintiff performing such manual labor. (See Pl.'s Exhs. E, F.) The Court is aware that defendant disputes that plaintiff performed such labor on the loading platform. However, after carefully reviewing the record in the light most favorable to plaintiff, and drawing all reasonable inferences in his favor, the Court declines to conclude as a matter of law that no genuine issue of material fact exists as to whether plaintiff suffered an adverse employment action because of his disability. The issue is whether defendant required plaintiff to perform heavy labor in violation of plaintiff's modified work assignment because of plaintiff's disability.[5] Thus, the Court denies defendant's motion for summary judgment on plaintiff's adverse employment action claim.

---

[5] Further, defendant has failed to proffer a legitimate, non-discriminatory reason for any such adverse action. Although defendant proffers such a reason for certain other adverse actions plaintiff alleges – such as his attendance at a "Bulk Mail Seminar," thus allegedly evincing defendant's intent for plaintiff to perform heavy labor – defendant does not provide any reasons for plaintiff's alleged assignment to the loading platform. Presumably, defendant did not address this particular adverse action – or address the pretext prong of the *McDonnell-Douglas* test with respect to that action – because defendant disputes the extent to which plaintiff was ever assigned to do manual labor on the loading platform. However, if a jury determines that plaintiff indeed received such an assignment, the jury will have to determine whether any legitimate reason defendant had was pretextual.

(2) Retaliation Claim

a. Legal Standard

As in the case of discrimination claims, a claim of retaliation is analyzed under the three-step burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas*. *See Treglia,* 313 F.3d at 719 (citing *Weixel*, 287 F.3d at 148); *Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.")). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of his activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action. *Sista*, 445 F.3d at 177; *see also Treglia*, 313 F.3d at 719. As stated above, the Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis."

In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute*, 420 F.3d at 173. Further, as stated above, once a plaintiff has set forth a *prima facie* case, the burden shifts to defendants to show that they had a legitimate, non-discriminatory reason for the adverse employment action. *Sista*, 445 F.3d at 169. If such a showing is made, the burden shifts back to plaintiffs to prove that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

b. Application

Collins argues that defendant retaliated against plaintiff for filing various workers' compensation cases by, among other things, refusing to honor plaintiff's modified work assignment. However, defendant argues that these workers' compensation cases are too temporally attenuated

11

from the alleged retaliatory action and, as described above, again disputes that any such work assignment occurred. With respect to the latter issue, as the Court described *supra*, genuine issues of material fact preclude the Court from determining whether such assignments occurred as a matter of law.

With respect to the former issue, it is undisputed that plaintiff filed four worker's compensation cases and a federal lawsuit against defendant between 1981 and 2003. (See Def.'s 56.1 ¶ 73.) Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03-CV-3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55-*56 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier). After carefully reviewing the record in this case, drawing all reasonable inferences in plaintiff's favor, the Court declines to conclude as a matter of law that plaintiff has failed to demonstrate a causal link between his workers' compensation cases and federal lawsuit, and his alleged assignment to the loading dock. There are genuine issues of fact

as to whether, due to plaintiff's history of repeated complaints against defendant – up to and including the year prior to the conduct relevant to this case – defendant retaliated against plaintiff by assigning him to tasks that violated his modified work assignment. Thus, the Court denies defendant's motion for summary judgment on plaintiff's retaliation claim.

### C. Failure to Accommodate Claim

#### (1) Legal Standard

As the Second Circuit has noted, "[d]iscrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 143 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* case for failure to accommodate under the ADA, an employee has the burden to demonstrate that: "1) he was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to demonstrate that the . . . proposed accommodation would have resulted in undue hardship." *Id.*

#### (2) Application

Here, Collins claims that defendant failed to accommodate plaintiff's disability by assigning plaintiff to the loading platform. As stated above, defendant disputes that plaintiff received this assignment. However, for the reasons stated above – including, among other things, plaintiff's affidavit and the letters of his colleagues – and based on the record in this case, the Court cannot determine as a matter of law whether plaintiff worked on the loading platform or whether such

assignment violated plaintiff's modified work assignment.[6] After carefully reviewing the record in this case, the Court has determined that there are disputed issues of fact as to whether defendant failed to accommodate plaintiff's disability by assigning him to manual labor on the loading platform. Thus, defendant's motion for summary judgment on plaintiff's claim for failure to accommodate is denied.[7]

IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 29, 2008
Central Islip, NY

---

[6] Further, defendant did not address whether such accommodation would have presented an undue hardship, presumably because defendant disputes that the loading platform assignment occurred. However, to the extent a jury find that defendant failed to accommodate plaintiff's alleged disability, the jury will also have to address the issue of undue burden.

[7] In his motion for summary judgment, defendant also argued that plaintiff had failed to exhaust his claims. However, as the Court stated at oral argument, plaintiff's complaint to the EEOC put defendant sufficiently on notice of all of plaintiff's claims. According to the Second Circuit, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). Here, plaintiff's EEOC complaint explicitly states, among other things: "This is an ongoing pattern of harassment + discrimination for filing workers' compensation cases. . . . On March 19, 2003 Postal Service agents refused to honor the U.S. Dept. Of Labor OWCP Rehabilitation Program for modified work assignment. . . . Postal Service agents are refusing to pay me even though I have medical documentation." (EEOC Complaint, dated Jan. 16, 2004). Thus, plaintiff's EEOC complaint was reasonably related to the very claims at issue in the present litigation, as described above and, therefore, the Court rejects defendant's argument that these claims were unexhausted.

14